[Cite as *Buck-Reed v. Sanford Plumbing, L.L.C.*, 2025-Ohio-5195.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Cheryl Buck-Reed et al., | : | |
| Plaintiffs-Appellants, | : | No. 25AP-416 |
| | | (C.P.C. No. 22CV-6013) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Sanford Plumbing, LLC et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 18, 2025

**On brief:** *John Brooks Cameron & Associates*, *John Brooks Cameron*, and *Christopher Jankowski*, for appellants.

**On brief:** *Pelini, Campbell & Ricard, LLC*, *Joshua R. Bills*, and *Eric M. Hopkins*, for Sanford Plumbing, LLC. **Argued:** *Eric M. Hopkins*.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Plaintiffs-appellants, Cheryl Buck-Reed and Mark Reed (collectively "appellants"), appeal from the April 21, 2025 judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Sanford Plumbing, LLC ("Sanford Plumbing") on Ms. Buck-Reed's negligence claim and Mr. Reed's derivative loss of consortium claim. Because we conclude the trial court did not err in finding no genuine issues of material fact existed as to whether the hazard was created by a Sanford Plumbing employee, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} This matter arises from Cheryl Buck-Reed's January 21, 2021 trip and fall over a raised electrical outlet box in the kitchen of North Elementary School in East Liverpool, Ohio ("the school") while working as a custodian for East Liverpool City Schools. Ms. Buck-Reed sustained injuries from the fall and further alleged loss of consortium with her husband, Mark Reed, as a result of those injuries.

### A. Ms. Buck-Reed's January 21, 2021 Trip and Fall

{¶ 3} In January 2021, the school hired Sanford Plumbing to excavate and replace underground piping in the school's kitchen that had been catching debris and preventing a toilet from draining. (*See* Dec. 20, 2023 Jay Pelley Dep. at 11-13; Oct. 12, 2023 Greg Eisenhart Dep. at 12-14. *See also* Oct. 12, 2023 Greg Jeffrey Nickell Dep. at 10.) Sanford Plumbing is a commercial plumbing company that has operated in the northeast Ohio area since the 1990s and has completed work at the school many times over the years. (*See* Eisenhart Dep. at 9-10; Pelley Dep. at 10-11.)

{¶ 4} Jay Pelley, a licensed plumber employed by Sanford Plumbing, determined the deteriorated inground pipe that would be replaced ran under tables and other items located in the food preparation area of the school's kitchen. (*See* Pelley Dep. at 11-16; Eisenhart Dep. at 13-17. *See also* Pelley Dep., Ex. 2.) Mr. Pelley marked the area where the kitchen floor needed to be trenched in order to remove and replace over 20 feet of piping, a drain, and other fittings. (*See* Pelley Dep. at 11-20; Pelley Dep., Ex. 2; Eisenhart Dep. at 21-22; Eisenhart Dep., Ex. 1.)

{¶ 5} Sanford Plumbing's owner, Greg Eisenhart, asked employees of the school to move tables, machinery, and other equipment that was located on or around the area where Mr. Pelley and his assistant, Eric Taylor, would be working. (Eisenhart Dep. at 14-19, 23; Pelley Dep. at 13.) It is undisputed that Sanford Plumbing employees did not move or rearrange any of the items in the school's kitchen and were not present when these items were moved by school employees. (*See* Eisenhart Dep. at 15-16; Pelley Dep. at 17-21; Sept. 26, 2023 Cheryl Buck-Reed Dep. at 57-58.) Indeed, Mr. Eisenhart's unrefuted account was that school employees historically moved items in areas where Sanford Plumbing conducted their work. (*See* Eisenhart Dep. at 15-16.)

{¶ 6} On January 21, 2021, Ms. Buck-Reed was working her usual shift as a custodian at the school when she tripped and fell over a raised electrical outlet box in the kitchen that had been located under one of the tables that was moved by school employees from the area of the plumbing work. (*See* Pelley Dep. at 18-19, 23; Buck-Reed Dep. at 36-37.) Ms. Buck-Reed admitted she was aware that work was being performed in the kitchen prior to her fall. (*See* Buck-Reed Dep. at 16-19, 27.) However, she denied receiving formal notice from the school about the work in the kitchen and was never instructed to stay out of the kitchen while the plumbing work was ongoing. (*See* Buck-Reed Dep. at 29-31.) Ms. Buck-Reed also testified there were no signs in the kitchen or cafeteria area warning about potential hazards associated with the plumbing work. (Buck-Reed Dep. at 37-38, 71-72.)

{¶ 7} On the date of the incident, Ms. Buck-Reed was cleaning and preparing the cafeteria and kitchen areas—at the suggestion of her supervisor, Sam Huddleston (head of grounds, custodian, and maintenance at the school)—in anticipation of students returning to the school for in-person learning on Monday, January 25, 2021.[1] (Buck-Reed Dep. at 17-19, 25, 28.) Recounting the incident, Ms. Buck-Reed testified she tripped over an electrical outlet box that was sticking up out of the ground near a desk in the kitchen, as depicted in a photograph taken after the incident by her daughter. (*See* Buck-Reed Dep. at 31-36, 56-67, 71-72, 80; Buck-Reed Dep., Ex. B.) She testified that one of the tables moved by school employees to allow for the plumbing work would typically be over this outlet box. (*See* Buck-Reed Dep. at 32, 36, 57-59.) Ms. Buck-Reed's fall occurred before Sanford Plumbing had finished the repair work—i.e., before the open trench had been refilled with cement— and she testified that she "ended up over in [the] ditch [area]" after her fall. (*See* Buck-Reed Dep. at 35, 41, 71-72.)

{¶ 8} Ms. Buck-Reed acknowledged the outlet box she tripped over existed before the January 21, 2021 incident and was not modified by the plumbing renovation. (*See* Buck-Reed Dep. at 62-63.) She also conceded that nothing prevented her from being able to see it. (Buck-Reed Dep. at 63-64.) Rather, Ms. Buck-Reed admitted she did not see it because she was "looking ahead" and "wasn't looking down." (Buck-Reed Dep. at 64.) She

---

[1] Students were learning remotely during the first half of the 2020-2021 school year due to the COVID-19 pandemic. (*See, e.g.*, Buck-Reed Dep. at 17-18, 25.)

also admitted she did not recall whether the desk depicted in the photograph taken after her fall (*see* Buck-Reed Dep., Ex. B) was actually in the kitchen at the time she fell. (Buck-Reed Dep. at 64-67.)

{¶ 9}   No one witnessed Ms. Buck-Reed's fall, and nothing in the record before us suggests it was captured on surveillance video. (*See, e.g.*, Buck-Reed Dep. at 20-24, 76-78; Nickell Dep. at 21.) Although Ms. Buck-Reed testified about a male worker from Protech Electrical Contracting or Sanford Plumbing working in the kitchen area on January 21, 2021, she was unable to provide any specifics to sufficiently identify that person beyond describing him mixing cement outside of the school sometime prior to her fall. (*See, e.g.*, Buck-Reed Dep. at 20-24, 32-33, 46, 48-52, 67-71.)

{¶ 10}  An employee of the school transported Ms. Buck-Reed to the hospital. (Buck-Reed Dep. at 20, 41.) As a result of the fall, Ms. Buck-Reed immediately lost consciousness and sustained scarring on her head, post-concussion injuries, temporary vision loss, and damage to her right rotator cuff requiring surgery. (Buck-Reed Dep. at 39-43, 78-80.)

{¶ 11}  Ms. Buck-Reed filed a workers' compensation claim in connection with her trip and fall. (*See* Buck-Reed Dep. at 44-47.) She did not return to work after the injury, and she ultimately retired in August 2023. (*See* Buck-Reed Dep. at 15, 47, 52-53.)

### B. Negligence Action Against Sanford Plumbing

{¶ 12}  In October 2022, Ms. Buck-Reed and Mr. Reed initiated this action against Sanford Plumbing, alleging claims for negligence and loss of consortium. As to the negligence claim, Ms. Buck-Reed alleged that "Sanford Plumbing and its employees owed a duty of ordinary care to [her] and others to, among other things, maintain the work zone in a safe manner and to warn people about any **concealed** hazards." (Emphasis added.) (Aug. 29, 2022 Compl. at ¶ 31.) Ms. Buck-Reed further alleged that "Sanford Plumbing and its employees breached [that] duty by, among other things, failing to warn people at North Elementary about the **concealed** and **hidden** outlet box." (Emphasis added.) (Compl. at ¶ 32.)

{¶ 13} Sanford Plumbing moved for summary judgment in November 2023 pursuant to Civ.R. 56. In that motion, Sanford Plumbing contended that appellants did not produce any evidence to show Sanford Plumbing created the hazard that caused Ms. Buck-

Reed to trip and fall. As such, Sanford Plumbing asserted there was no factual basis for any jury to find that Sanford Plumbing owed any duty of care to Ms. Buck-Reed—much less that it was in breach of that duty. (Nov. 2, 2023 Mot. for Summ. Jgmt. at 5-8.) Sanford Plumbing also argued the open-and-obvious doctrine applied because it did not create the hazard that caused Ms. Buck-Reed to trip, and there were no attendant circumstances preventing her from being able to recognize the open and obvious hazard. (*See* Mot. for Summ. Jgmt. at 8-10.)

{¶ 14} In opposing that motion, appellants argued there was a genuine issue of material fact as to whether Sanford Plumbing created the hazard resulting in Ms. Buck-Reed's injuries because the reconfiguration of the kitchen occurred at Sanford Plumbing's instruction. (*See* Jan. 11, 2024 Brief in Opp. at 8-9.) Appellants also contended that whether the hazard was open and obvious remained a genuine issue of material fact because the raised outlet box "was usually concealed by a table" and "a desk had been moved to block the view of someone coming around it." (Brief in Opp. at 9-11.) And, even if the danger was open and obvious, appellants argued that attendant circumstances—"the urgency in getting the school ready to resume in-person classes after the COVID[-19] pandemic"—diverted Ms. Buck-Reed's attention such that the open-and-obvious doctrine should not apply. (Emphasis omitted.) (Brief in Opp. at 11-12.)

{¶ 15} On April 21, 2025, the trial court issued a written decision granting Sanford Plumbing's motion for summary judgment. Specifically, the trial court found the undisputed evidence established that Sanford Plumbing neither raised the outlet box, plugged any wires into the box, asked for the outlet box to be raised, knew about the raised outlet box prior to Ms. Buck-Reed's fall, nor had any role in moving the items in the kitchen. Thus, the trial court concluded appellants could not establish actionable negligence against Sanford Plumbing. In addition to concluding that Sanford Plumbing had no duty to warn Ms. Buck-Reed of a hazard it did not create or know about, the trial court also found it was not foreseeable that a person would be injured by a raised outlet box that was "open and obvious," discoverable upon ordinary inspection, and readily appreciable by an ordinary person. (*See* Apr. 21, 2025 Decision and Entry at 7, citing *Cash v. Cincinnati*, 66 Ohio St.2d 319, 321 (1981), and *Lydic v. Lowe's Companies*, 2002-Ohio-5001, ¶ 10 (10th Dist.).) The trial court further found the rush to prepare the school for the students' return did not

constitute attendant circumstances sufficient to render the open-and-obvious doctrine inapplicable to this case. (*See* Apr. 21, 2025 Decision and Entry at 8-10.)

{¶ 16} Appellants timely appealed from that judgment and raise the following four assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON [MS. BUCK-REED'S] NEGLIGENCE CLAIM BY FINDING THAT SANFORD PLUMBING DIDN'T OWE A DUTY AND BY MISAPPLYING THE OPEN AND OBVIOUS DOCTRINE TO AN INDEPENDENT CONTRACTOR.
>
> [II.] EVEN IF THE OPEN AND OBVIOUS DOCTRINE APPLIED, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON [MS. BUCK-REED'S] NEGLIGENCE CLAIM BY HOLDING THAT THE HAZARD WAS OPEN AND OBVIOUS AND THAT ATTENDANT CIRCUMSTANCES WEREN'T ABNORMAL ENOUGH TO NEGATE THAT DEFENSE.
>
> [III.] THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN IT FAILED TO CONSTRUE ALL ISSUES OF FACT IN A LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY.
>
> [IV.] THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON [MR. REED'S] LOSS OF CONSORTIUM CLAIM.

## II. ANALYSIS

{¶ 17} Appellants contend they produced evidence from which an inference can reasonably be drawn that Sanford Plumbing's employee created the hazard resulting in Ms. Buck-Reed's trip and fall injuries. On review of the record, we disagree.

### A. Summary Judgment Standard and Standard of Review

{¶ 18} Under Civ.R. 56(C), summary judgment is proper when the moving party establishes: (1) an absence of genuine issues of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds could only find in favor of the moving party. *See, e.g., State ex rel. Duncan v. Mentor City Council*, 2005-Ohio-2163, ¶ 9; *Oliver v. Fox's Food, LLC*, 2023-Ohio-1551, ¶ 9 (10th Dist.).

{¶ 19} Civ.R. 56(C) limits the types of materials a court may consider in ruling on a motion for summary judgment. Specifically, it provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Supporting and opposing affidavits submitted under Civ.R. 56(C) "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). Additionally, " '[o]nly facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment.' " *Guernsey Bank v. Milano Sports Ents., LLC*, 2008-Ohio-2420, ¶ 59 (10th Dist.), quoting *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 631, fn. 4 (1992).

{¶ 20} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying the portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Oliver* at ¶ 9, citing *Dresher* at 293, and *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).

{¶ 21} If the moving party has satisfied its initial burden under Civ.R. 56(C), then the nonmoving party " 'has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Heimberger v. Zeal Hotel Group Ltd.*, 2015-Ohio-3845, ¶ 14 (10th Dist.), quoting *Dresher* at 293. The nonmoving party may not rest on the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that shows the existence of a genuine dispute over a material fact. *A.M. v. Miami Univ.*, 2017-Ohio-8586, ¶ 30 (10th Dist.), citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist. 1991).

In the summary judgment context, a "material" fact is one that might affect the outcome of the case under the applicable substantive law. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). A genuine dispute exists if the evidence presents a sufficient disagreement between the parties' positions. *Id.*

{¶ 22} We review decisions granting summary judgment de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 2015-Ohio-2661, ¶ 12 (10th Dist.), citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 2014-Ohio-3935, ¶ 5 (10th Dist.). Under the de novo standard of review, we apply the same legal standard as the trial court but conduct an independent review of the evidence without deference to the trial court's decision. *See, e.g., Gabriel* at ¶ 12; *Nazareth Deli LLC v. John W. Dawson Ins. Inc.*, 2022-Ohio-3994, ¶ 22 (10th Dist.). "We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it." *Riverside v. State*, 2010-Ohio-5868, ¶ 17 (10th Dist.), citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist. 1995).

{¶ 23} It is well-established, however, that "on a summary-judgment motion, any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32, citing Civ.R. 56(C) and *Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188 (1986) ("In reviewing a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party."). Because Sanford Plumbing "sought to resolve this case on summary judgment, the evidence in this case could not be weighed." *Id.* Indeed, "we are required not only to construe evidence in a light most favorable to nonmoving parties but to also resolve inferences which may reasonably be drawn from the evidence in favor of nonmoving parties." *Thompson v. Ohio State Univ. Physicians, Inc.*, 2011-Ohio-2270, ¶ 16 (10th Dist.), citing *McCarthy v. Robinson*, 1994 Ohio App. LEXIS 5348 (10th Dist. Dec. 1, 1994). Thus, " [w]here competing inferences may be drawn or where the facts presented are uncertain or indefinite, summary judgment is not appropriate and such matters must be left to the trier-of-fact.' " *Id.*, quoting *Sprouse v. Allstate Ins. Co.*, 1989 Ohio App. LEXIS 3990, *4-5 (10th Dist. Oct. 17, 1989), citing *Duke v. Sanymetal Prods. Co.*, 31 Ohio App.2d 78 (8th Dist. 1972). *See also Smathers* at ¶ 32 ("When factual ambiguities exist, inferences must still be resolved in favor of the nonmoving party."). However, a nonmovant cannot meet

her reciprocal burden of demonstrating a genuine issue of material fact remains for trial by relying upon mere speculation or conjecture. *See, e.g.*, *Sharp v. Andersons, Inc.*, 2006-Ohio-4075, ¶ 18-22 (10th Dist.).

**B. Legal Standards**

{¶ 24} Ms. Buck-Reed asserted a negligence claim against Sanford Plumbing based on her theory that her trip and fall in the school's kitchen on January 21, 2021 was proximately caused by the negligent actions of a Sanford Plumbing employee.

{¶ 25} To establish negligence, a plaintiff must prove: (1) the existence of a duty; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. *See, e.g.*, *A.M.*, 2017-Ohio-8586, at ¶ 32 (10th Dist.); *Kiser v. United Dairy Farmers*, 2023-Ohio-2136, ¶ 10 (10th Dist.).

{¶ 26} " 'Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.' " *Wallace v. Ohio DOC*, 2002-Ohio-4210, ¶ 23, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989). "Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability." *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996). "[T]he status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owes the entrant." *Id.*

{¶ 27} The open-and-obvious doctrine relates to the threshold issue of duty. *Armstrong v. Best Buy Co.*, 2003-Ohio-2573, ¶ 13. Under the open-and-obvious doctrine, a premises owner—here, the school—owes no duty to persons entering the premises regarding dangers that are open and obvious. *Id.* at ¶ 5. This is because the open and obvious nature of the hazard itself serves as a warning such that the owner may reasonably expect persons entering the premises will discover those dangers and take appropriate measures to protect themselves. *Id.*, citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). When applicable, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims. *Id.* at ¶ 5.

{¶ 28} The instant case, however, concerns the liability of an independent contractor instead of a premises owner. Ms. Buck-Reed tripped and fell on a raised outlet box located on school premises, which she alleges was exposed by the actions of Sanford Plumbing, an independent contractor. An independent contractor's lack of a property interest in the premises negates the contractor's ability to rely on defenses traditionally created for property owners. *See Torchik v. Boyce*, 2009-Ohio-1248, ¶ 11, citing *Simmers* at syllabus. Thus, "[a]n independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property." *Simmers* at syllabus. Accordingly, an independent contractor who creates a dangerous condition on someone else's property is subject to the general laws of negligence. *See Torchik* at ¶ 11. This means that a "contractor's duty to the plaintiff depended upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Id.*, citing *Simmers* at 645. An injury is foreseeable if the independent contractor knew or should have known that its breach of duty was likely to result in harm to someone. *Id.* at ¶ 14, citing *Simmers* at 645.

{¶ 29} Where negligence revolves around the existence of a hazard or defect, a duty of reasonable care does not arise unless the defendant has notice, either actual or constructive, of such hazard or defect. *Heckert v. Patrick*, 15 Ohio St.3d 402, 405 (1984); *Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St.2d 38, 41 (1967).

### C. Application

{¶ 30} On appeal, appellants do not dispute that Sanford Plumbing did not install or raise the outlet box on which Ms. Buck-Reed tripped. (Appellants' Brief at 13-14.) Appellants also do not dispute that school employees—not Sanford Plumbing—moved the items in the area where plumbing work was to be done, including the table that was typically over the outlet box and the desk Ms. Buck-Reed claimed obstructed her view. (*See* Appellants' Brief at 13-15; Buck-Reed Dep. at 32-36.)

{¶ 31} Appellants nonetheless argue that the evidence created a genuine issue of material fact as to whether Sanford Plumbing, through its employee(s), was responsible for creating the hazard that caused Ms. Buck-Reed to trip and fall. Appellants claim that, by

asking **_school employees_** to move items in the kitchen so it could excavate and replace the inground piping, it is reasonable to conclude that the risk of harm to Ms. Buck-Reed was foreseeable by Sanford Plumbing's employees. (Appellants' Brief at 14-15.)

{¶ 32} However, this court cannot find that, as a matter of law, Sanford Plumbing should have foreseen the **_school's_** employees would have moved the items in the kitchen in a way that purportedly created a hazard or dangerous condition. To that end, when viewing all evidence in the record in the light most favorable to Ms. Buck-Reed, no finder of fact could reasonably infer that a Sanford Plumbing employee created or knew about the hazard that caused Ms. Buck-Reed's injuries from the January 21, 2021 trip and fall. While Sanford Plumbing may have requested that school employees move items in the kitchen so they could perform the work on the inground pipe, nothing in the record before us supports any finding that Sanford Plumbing employees were present when these items were moved, told school employees where to place the items, or had any awareness of the raised outlet box before Ms. Buck-Reed tripped over it. Under these circumstances, Sanford Plumbing did not owe a duty to Ms. Buck-Reed.

{¶ 33} Without knowledge of the risk, Sanford Plumbing did not have a duty to warn Ms. Buck-Reed of it or to correct the allegedly hazardous condition. It follows, then, that Sanford Plumbing did not breach a duty to her. *See, e.g.*, *Anderson v. Ruoff*, 100 Ohio App.3d 601, 604 (10th Dist. 1995).

{¶ 34} Based on the foregoing, we agree with the trial court's determination that appellants failed to establish a prima facie case for negligence against Sanford Plumbing and, as a result, Sanford Plumbing is entitled to summary judgment as a matter of law on that claim. Further, having reached the same determination as the trial court through our de novo review, we find no basis to conclude the trial court failed to construe all issues of fact in a light most favorable to appellants. Accordingly, we overrule appellants' first and third assignments of error.

{¶ 35} Having found that Sanford Plumbing did not owe a duty of care to Ms. Buck-Reed for the hazard created when school employees moved furniture in the kitchen, we need not consider whether the open-and-obvious doctrine applied. Indeed, as our disposition of appellants' first and third assignments of error renders moot the arguments

appellants present in support of their second assignment of error, we decline to address them. *See* App.R. 12(A)(1)(c).

{¶ 36} Regarding appellants' fourth assignment of error, a claim for "loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93 (1992). Mr. Reed's loss of consortium claim is derivative of Ms. Buck-Reed's primary tort claim for negligence. Having found that Ms. Buck-Reed failed to present a negligence claim for the reasons stated above, such determination precludes Mr. Reed's loss of consortium claim. We therefore find no error in the trial court's decision to grant summary judgment on this claim. As such, we overrule appellants' fourth assignment of error.

## III. CONCLUSION

{¶ 37} Having overruled appellants' first, third, and fourth assignments of error, thus rendering moot appellants' second assignment of error, we affirm the April 21, 2025 judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

————————————